**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Ocala Division**

SHERLYN MURRELL,

     Plaintiff.

                                         CASE NO: 5:18-CV-43-JSM-PRL

v.

JULIE JONES, as Secretary of the
Florida Department of Corrections,
CORIZON, INC. and CENTURION OF
FLORIDA, LLC, health services
corporations, and JOSE RODRIGUEZ,
M.D., individually,

     Defendants.

_____/

## FIRST AMENDED COMPLANT

### Background

1.  The Florida Department of Corrections ("FDOC") and its medical contractors Corizon, LLC and Centurion of Florida, LLC, have a policy, practice, and custom of declining to provide for their inmates and prisoners needed medical consultations and referrals to doctors, physicians, and medical providers outside institution the prisoner is incarcerated in. This policy, practice, and custom includes denying inmates necessary physical therapy to recover after surgical procedures are performed. When inmates undergo a surgical procedure, like a total shoulder arthroplasty, physical therapy is needed to maintain a normal range of motion and ensure the shoulder doesn't further deteriorate. Despite the fact that physical therapy is the only way to prevent those negative outcomes, and despite the need to consult with outside doctors and physicians to treat complicated medical problems, Defendants have a policy of refusing to provide these outside consultations for the purpose of reducing costs and increasing profits. This

1

policy prohibits medical staff from exercising medical judgment and has resulted in the denial of physical therapy and other consultations to dozens, if not hundreds, of incarcerated patients, leaving them in severe pain, unable to participate in normal activities, and at risk for serious complications. This policy and practice causes the wanton infliction of pain and amounts to deliberate indifference to the serious medical needs of those incarcerated in the FDOC system, in violation of the Eight Amendment to the United States Constitution.

## Jurisdiction and Venue

2.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 in that this is a civil action arising under the Constitution of the United States.

3.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, or rights secured to the Plaintiffs by the Constitution and laws of the United States.

4.   Plaintiff's claim for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 32 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

5.   Venue is proper in this district pursuant to 28 U.S.C. § 1392(b) and § 1391(b-c), as Defendants do business in this judicial district and division, and many of the events or omissions giving rise to the claims occurred in this judicial district and division.

6.   All conditions precedent to this lawsuit have been satisfied or waived.

## Parties

7.   Plaintiff Sherlyn Murrell was incarcerated in the FDOC system during all relevant times. She suffers from a torn rotator cuff that required a total shoulder arthroplasty. After the surgery, Sherlyn Murrell was given referrals for physical therapy to take place by a licensed physical therapist that was not delivered until more than nine months after the surgery.

8.   Defendant Julie L. Jones is the Secretary of the Florida Department of Corrections (FDOC). As such, she is responsible for the overall operation of the FDOC, including the operation of prison facilities. Defendant Jones has a non-delegable duty to provide constitutionally adequate medical care to all persons in her custody. She is sued in her official capacity. Defendant Jones may be referred to herein as the Florida Department of Corrections or FDOC.

9.   Defendant Corizon, LLC (Corizon) is an out-of-state corporation, registered and doing business in Florida. Since approximately September or October 13 (depending on the facility), and through April of 2016, Corizon contracted with the FDOC to provide medical and mental health care services to all persons confined in the majority of FDOC prisons. Corizon has and enforces the corporate policy and custom regarding outside consultations and physical therapy described herein. Upon information and belief, all medical professionals (including doctors and nurses) at the relevant institutions have been were employed by Corizon since September or October of 2013 and were acting within the course and scope of their employment. Defendant Corizon is sued for damages.

10. Defendant Centurion of Florida, LLC, (Centurion), is an out-of-state corporation, registered and doing business in Florida. Since approximately April 2016, Centurion contracted with the FDOC to provide medical and mental health care services to all persons confined in the majority of FDOC prisons. Centurion has and enforces the corporate policy and custom

3

regarding outside consultations and physical therapy described herein. Upon information and belief, all medical professionals (including doctors and nurses) at the relevant institutions have been or were employed by Centurion since April of 2016 and were acting within the course and scope of their employment. Defendant Centurion is sued for damages.

11. Defendant Dr. Jose Rodriguez was, at all relevant times, the medical director of Lowell Correctional Institution. As such, Dr. Rodriguez was responsible for the medical care of all FDOC inmates at Lowell Correctional Institution and had a non-delegable duty to provide constitutionally adequate medical care to all persons in his custody. Defendant Rodriguez was employed by Corizon, LLC, until the termination of their contract with FDOC. When Centurion took over the contract, Defendant Rodriguez was employed with Centurion. Dr. Rodriguez helps enforce the policy and custom regarding outside consultations and physical therapy described herein. He is sued in his official capacity.

12. The actions of the Defendants and their agents were performed under color of state law and constitute state actions.

### General Factual Allegations

#### *Total Shoulder Arthroplasty and Physical Therapy*

13. Total shoulder arthroplasty is a procedure used to replace the diseased or damaged ball and socket joint of the shoulder.

14. Post-surgery, patients who undergo this procedure can typically expect to experience significant decreases in pain and increases in range of motion.

15. Recovery from this procedure can take up to one to two years. Typical recovery programs include therapies focusing on a progression form passive to active range of motion, and later on incorporating progressive stretching and strengthening.

16. Physical therapy is essential to recover from this procedure. Physical therapists typically assist that patient with passive movements and gentle exercises to slowly regain movement of the shoulder post-surgery.

17. As the therapy progresses, the therapist will typically guide the patient in exercises designed to strengthen the shoulder, including the use of resistance bands and weights.

### *FDOC, Corizon, and Centurion's Unlawful Practice of Denying Physical Therapy Consultations*

18. Inmates incarcerated within the FDOC system are completely dependent upon Defendants to provide them with medical care. Prisoners are not free to seek their own care, even if they can pay for it.

19. In general, the delivery of medical care within the FDOC is supposed to work in the following manner. If a prisoner has a medical issue, they can access sick call, where they usually see a nurse. The nurse can refer the prisoner for an appointment with the institution physician. If the physician believes a consult with a specialist is needed, the physician can request a consultation. That request is forwarded to Utilization Management (UM) in Tallahassee, which is controlled by Defendants. UM can either approve or deny the request. If the request is approved, the prisoner is sent to the specialist. Then the process repeats itself: If the specialist feels a certain procedure is needed, the specialist submits a consult report to UM requesting the procedure. If approved, the procedure is scheduled at some point in the future.

20. UM is in effect the "gatekeeper" and makes the final determination whether medical care will be provided. UM's decision is often made by someone who is not a specialist in the area at issue, and usually without ever seeing the patient or first consulting with the prison physician.

21. Rather than making decisions based on medical judgment, however, Defendants make health care decisions based on costs, in a way that prevents medical professionals from

exercising medical judgment in deciding what treatment to provide and when it should be provided. That decision-making is illustrated by Defendants' approach to patients who need outside consultations, including for physical therapy. Specifically, Defendants have a policy, practice, and custom of not providing physical therapy with medical providers outside the institution where the inmate is incarcerated.

22. Thus, when someone presents who needs an outside consultation or physical therapy, one of several things happen: The institution refuses to submit a consult request for the patient to see a physical therapist. Or, the institution submits the request, but determines that the physical therapy can be treated by a series of exercises the prisoner completes in his cell. Or, the consult request is granted but, after the physical therapist recommends therapy, the therapy is denied by the UM. All of these actions are taken pursuant to Defendants' policy.

23. Defendants have enforced this policy, practice, and custom despite knowing that failing to provide this therapy will lead to prisoners being left in excruciating pain, limited in their range of motion, limited in their activities, and at risk for serious complications. Defendants have acted with deliberate indifference to the serious medical needs of people incarcerated in the FDOC system.

### *Allegations Regarding Sherlyn Murrell*

24. Sherlyn Murrell was incarcerated in the FDOC system during all relevant times. She suffered from a torn rotator cuff that caused her extreme pain. She underwent a total shoulder arthroplasty with biceps tenodesis and rotator cuff repair on September 14, 2015. Despite multiple recommendations for physical therapy post-operation, Defendants did not provide this care until June of 2016.

25. Ms. Murrell complained of pain in her shoulder as early as May of 2015, when she was initially transferred to the care of FDOC.

26. After the procedure, Dr. Steel, who performed the operation, recommended Ms. Murrell undergo an extensive physical therapy treatment schedule to maintain the range of motion in her shoulder.

27. Dr. Jose Rodriguez received this referral for physical therapy as early as November of 2015. Dr. Jose Rodriguez denied the request for physical therapy, pursuant to Defendants' policy.

28. In March of 2016, Dr. Jose Rodriguez denied Ms. Murrell's request for a physical therapy consult, and instructed her to perform exercises on her own, pursuant to Defendants' policy.

29. From September 19, 2015, through June of 2016, Plaintiff made numerous requests, through informal grievances and inmate sick-call requests, for a consultation for physical therapy. They were all denied, pursuant to Defendants' policy.

30. On November 24, 2015, Ms. Murrell had a follow-up appointment with the orthopedic doctor who performed the surgery. At that appointment, a physical therapist noted that Ms. Murrell's need for physical therapy was "urgent", and the physician again ordered Ms. Murrell to complete an extensive physical therapy. Dr. Jose Rodriguez again denied this request, pursuant to Defendants' policy.

31. In May of 2016, Dr. Jose Rodriguez evaluated Ms. Murrell's shoulder and determined that she needed physical therapy. He finally referred her to the Regional Medical Center for a course of physical therapy that lasted from July of 2016 through September of 2016.

32. Ms. Murrell was released from the "care" of the FDOC in December of 2016. She has limited range of motion in her shoulder and needs another total shoulder arthroplasty to repair the damage done to her shoulder by the policies, practices, and custom of Defendants.

### *Other Examples of Defendants' Failure to Provide Physical Therapy*

33. Because of Defendants' policy, practice, and custom of not providing consultations for medically needed physical therapy, numerous people incarcerated in the FDOC have not received therapy and have been left in extreme pain and at risk for severe complications. Several examples follow.

### Patients Who Were Recommended for Physical Therapy But Did Not Receive It

34. Some patients have been seen by an orthopedic doctor who recommended physical therapy but Defendants, pursuant to their policy, practice, and custom, refused to allow the physical therapy to occur. Some examples follow.

### *Craig Jackson (Inmate #238015)*

35. Craig Jackson is incarcerated in the FDOC, and was at all relevant times. He was involved in an accident where a truck ran him over, leading to arthritis in his neck and left shoulder.

36. In November of 2015, Mr. Jackson consulted with Dr. Lee Brown, who informed Mr. Jackson that he suffered from arthritis in his neck and shoulder, and provided Mr. Jackson with a health slip for a referral for continued treatment, including physical therapy.

37. Mr. Jackson continued to complain of pain in his left shoulder and neck while incarcerated at Santa Rosa Correctional Institution, which outsources its medical care to Corizon and, later, Centurion.

38. Despite these complaints, Mr. Jackson did not see a physical therapist until he went to North Florida Reception Medical Center in December of 2016.

39. During the visit with the physical therapist, Mr. Jackson learned that he suffered from a pinched nerve and torn rotator cuff, which would benefit from physical therapy.

40. The physical therapist at North Florida Reception Medical Center informed Mr. Jackson that, because Mr. Jackson had not been provided with the physical therapy he needed earlier, Mr. Jackson would always experience pain in his arm.

41. Mr. Jackson then treated with the physical therapist for four weeks.

_Wilbert Hurst_

42.  Wilbert Hurst is incarcerated in the FDOC system, and was at all relevant times. He suffered from a broken hand injured in an altercation with another inmate.

43.  On January 20, 2017, an X-Ray of Mr. Hurst's hand revealed that his hand was broken. Dr. Bichara, a physician employed by Centurion, recommended surgery to repair the broken hand.

44.  Mr. Hurst made numerous requests for the recommended surgery but did not have the procedure performed until March 30, 2017.

45.  Between January 20, 2017, and March 30, 2017, Mr. Hurst suffered extreme pain and swelling in his hand that went untreated until the surgical procedure.

46. On June 28, 2017, Dr. Ong recommended Mr. Hurst undergo a physical therapy regimen for eight weeks at Regional Medical Center.

47. Centurion staff did not allow Mr. Hurst to complete physical therapy at Regional Medical Center until August of 2017. Though 8 weeks were ordered, Mr. Hurst was only allowed to complete four sessions of therapy.

48. Mr. Hurst continues to suffer pain and swelling in his hand, and has been told that, because he did not get adequate physical therapy, his hand will never be the same.

49. Mr. Hurst now requires a second surgery to repair the damage done to his hand.

**Patients Who Were Recommended for Outside Consultations But Were Denied**

50. Defendants have refused to allow many patients to seek outside treatment for a consult, despite the clear need to do so. Many of them have been recommended for consultations by institutional physicians, which have then been denied by UM. Some examples follow.

*Scotty Diaz (Inmate #670614)*

51. Scotty Santos Diaz is incarcerated in the FDOC system, and was at all relevant times. He suffers from severe primary open-angle glaucoma which causes him severe pain. He has lost total vision in his right eye and is rapidly losing vision in his left eye.

52. While incarcerated with the FDOC, and before he lost vision in his right eye, Scotty Diaz was evaluated by a board certified glaucoma specialist who determined that Mr. Diaz suffered abnormal or severe damage from glaucoma and ordered that Mr. Diaz follow up with this doctor to determine and monitor for progression of functional loss of vision from glaucoma.

53. Mr. Diaz was soon transferred to Holmes Correctional Institution, which outsources medical care to Centurion.

54. Mr. Diaz informed the nursing staff of his need to treat with the glaucoma doctor. The medical staff refused to allow Mr. Diaz to seek treatment with this outside glaucoma doctor. And in fact refused any follow-up treatment for his glaucoma.

55. Mr. Diaz filed numerous grievances to the Warden, the Department of Corrections, and the Secretary, who all refused to allow Mr. Diaz to seek follow-up care with the glaucoma specialist.

56. In September 2016, Mr. Diaz woke up to discover he could no longer see out of his right eye.

57. After this discovery, medical staff finally allowed Mr. Diaz to seek treatment with a glaucoma doctor.

*Albert T. Owens (Inmate #193166)*

58. Albert T. Owens is incarcerated in the FDOC system, and was at all relevant times. He suffers from bipolar disorder, an anti-social personality disorder, depression, epilepsy, and a history of suicidal thoughts and behavior.

59. In April of 2016, Mr. Owens filled out a formal grievance, requesting access to mental health services from Dr. Beckford.

60. Dr. Beckford, a mental health physician for Centurion, denied this request and instructed Mr. Owens to wait for his regularly scheduled appointments.

61. In May of 2016, Mr. Owens informed Dr. Beckford that Mr. Owens was extremely depressed at the news his sister suffered from terminal cancer and requested mental health treatment. Dr. Beckford denied this request and told Mr. Owens there was nothing he could do unless Mr. Owens expressed desire to kill himself or others.

62. On May 28, 2016, Mr. Owens attempted to kill himself by cutting open a vein in his arm. Once stabilized, he again requested mental health services. Medical staff placed Mr. Owens in confinement and refused to provide the requested care.

*Perry Lapuma (Inmate #086188)*

63. Perry Lapuma is incarcerated in the FDOC system, and was at all relevant times. He suffers from severe abdominal pain related to his gastrointestinal tract.

64. In December of 2012, Mr. Lapuma underwent surgery to remove his gallbladder.

65. After the procedure, Mr. Lapuma was released to the care of Centurion medical staff Taylor Correctional Institution. Dr. Shah, who performed the procedure, instructed Mr. Lapuma that he needed to follow up with a gastrointestinal doctor every six months and to take medication for pancreatitis.

66. Taylor C.I. staff allowed Mr. Lapuma to see Dr. Shah every six months through February 2014, but did not comply with Dr. Shah's orders to provide Mr. Lapuma with pancreatitis medication.

67. Taylor C.I. staff cut off Mr. Lapuma's access to treatment with Dr. Shah after February 2014.

### *Corizon's History of Providing Inadequate Medical Care*

68. The Department of Corrections contracted with Corizon to provide all medical and mental health care in roughly 58 out of 72 of the FDOC's prison facilities. This included all of FDOC regions I and II, and several prisons in Region III. Corizon assumed responsibility for providing care in these prisons in approximately September or October 2013.

69. Under the contract, Corizon was paid a fixed per-inmate price multiplied by the average number of inmates in the facilities Corizon serves. Corizon received approximately $229 million per year, or roughly $1.14 billion over five years. All costs of providing health care were borne by Corizon. Moreover, Corizon has to pay the FDOC $250.00 per inmate every time it transported an inmate over 50 miles roundtrip for medical services, with some exceptions.

70. Thus, Corizon had a financial incentive to avoid providing medical care and treatment, especially when that care involved sending prisoners to outside specialists.

71. Almost immediately after Corizon took over medical care, the quality of care began to rapidly deteriorate. In January 2014, less than four months after Corizon took over, the monthly inmate death count, excluding homicides and natural causes, reached a 10-year high of 36. Inmate deaths for the first seven months of 2014 totaled 206, also a 10-year high when compared to the first seven months of the last 18 years, and an 18.4% increase from the first seven months of 2012.

72. In the first 8 months of 2014, Corizon and Wexford (the other private medical contractor for the remaining FDOC facilities) sent 1,009 inmates to outside hospitals. At that pace, the number of inmates referred to hospitals would drop 47% from 2012, the last full year that the FDOC provided health care without a private contractor.

73. In September 2014 – only one year after Corizon took over medical care – then-FDOC Secretary Michael Crews sent a letter to Corizon threatening to withhold payment and delete facilities from Corizon's contract if improvements were not made to the level of health care being provided to FDOC prisoners. The letter stated Corizon's "level of care continues to fall below the contractually required standard." Specifically, Crews identified failures in patient care issues, utilization management, and communication.

74. For a six month audit period ending in August 2014, Corizon's medical staff at Reception and Medical Center (RMC) – the FDOC's only hospital facility – received a grade of zero for failing to place inmates with physical and mental impairments in settings that would adequately provide for their health care needs.

75. In another review conducted at the Union Correctional Institution form January 2014 to July 2014, it was found that nursing staff failed to document patient visits, medical records were mismanaged, and most inmates were not given periodic screenings.

76. Corizon was fined $67,500 by the FDOC in May 2015 for failing a series of performance audits conducted over the past year. A review noted that physicians were only performing rounds 15 percent of the time they were scheduled to do so.

77. Corizon continued to be the primary health care provided through April of 2016, despite the Secretary's knowledge that Corizon failed to provide known needed medical care, thereby causing prisoners to suffer needlessly in pain.

### Centurion's History of Providing Inadequate Medical Care

78. The Department of Corrections contracted with Centurion to provide all medical and mental health care in all facilities that Corizon operated. This included all of FDOC regions I and II, and several prisons in Region III. Centurion assumed responsibility for providing care in these prisons in approximately April 2016.

79. The original contract between the FDOC and Centurion ran through January 2018 and paid Centurion $268 million dollars in exchange for mental and health care for the FDOC inmates in Regions I, II, and III.

80. Under the contract, Centurion was paid a fixed per-inmate price multiplied by the average number of inmates in the facilities Centurion serves. All costs of providing health care were borne by Centurion.

81. Thus, Centurion has a financial incentive to avoid providing medical care and treatment, especially when that care involved sending prisoners to outside specialists.

82. In 2017, the first year that Centurion provided health and mental care to FDOC inmates, the inmate death rate rose by 20% (from 356 deaths in 2016 to 428 in 2017), despite the inmate population decreasing by over fifteen hundred persons.

83. In 2018, the inmate death rate is up 29% from the same time in 2017.

## CAUSE OF ACTION

## 42 U.S.C. § 1983

**I.      Defendant Jones' Violation of the Eighth Amendment – Failure to Treat – Deliberate Indifference to a Serious, Known Medical Need**

84. Defendant Julie Jones, as Secretary of the FDOC, knew about and enforced the policies described herein. Defendant Jones knew about Plaintiff's serious medical needs (including pain, debilitation, and increased risk of serious complications), yet Defendant intentionally failed to provide and intentionally delayed physical therapy that would have addressed those serious medical needs, knowing that her actions have resulted, and will continue to result, in Plaintiff's continued suffered. Thus, Defendant's actions have caused the wanton infliction of pain upon FDOC prisoners, and have exhibited deliberate indifferent to the serious medical needs of Plaintiff, in violation of the Eight Amendment.

85. Plaintiff is entitled to relief against Defendant Jones, in her official capacity, for a systemic failure, through her agents and employees ("staff") to treat Murrell's known serious medical conditions in violation of the Eight Amendment to the United States Constitution, as further set out above and as follows:

a.   Plaintiff was intermittently denied care, including critically-needed physical therapy;

b.   Plaintiff was forced to wait months for this case despite the clear and present need; and

c.   Medical staff at countermanded or ignored Murrell's pleas for medical care.

86. Defendant knows, and has known, of the substantial risk of serious harm and actual harm faced by FDOC prisoners who are unable to complete medically needed physical therapy. Yet Defendant has disregarded, and continues to disregard, those risk and harms by failing to provide

the physical therapy that would alleviate those risks and harms. Defendant has been deliberately indifferent to the substantial risk of serious harm to FDOC prisoners who need physical therapy.

87. Defendant knows, and has known, of the substantial risk of serious harm and actual harm faced by FDOC prisoners who are unable to consult and treat with specialists and physicians outside of the FDOC system when they have been referred or recommended to do so. Yet Defendant has disregarded, and continues to disregard, those risks and harms by failing to provide for consultations with physicians outside the FDOC system. Defendant has been deliberately indifferent to the substantial risk of serious harm to FDOC prisoners who need to treat with medical providers outside the FDOC system.

88. Defendant's actions with respect to Plaintiff amount to grossly inadequate care.

89. Defendant Jones has a non-delegable duty to provide Plaintiff with needed medical care, including physical therapy, and to protect her from known dangers of serious harm.

90. As a direct and proximate cause of this pattern, practice, policy, and deliberate indifference, Plaintiff has suffered, and continues to suffer from harm and violation of her Eighth Amendment rights.

91. By denying Plaintiff her medically needed physical therapy, Defendant imposed punishment far in excess of that authorized by law, contrary to the Eighth Amendment.

92. Defendant's denial of Plaintiff's medically needed physical therapy violated all standards of decency, contrary to the Eight Amendment.

93. Defendant's actions and "treatment" with respect to Plaintiff's need for physical therapy is medical care so cursory as to amount to no medical care at all.

94. As it was necessary for Plaintiff to retain the undersigned attorney to represent her, Plaintiff is entitled to an award of attorneys' fees and costs.

**II.    Defendant Corizon's Violation of the Eighth Amendment-
Failure to Treat Pursuant to *Monell* (custom policy, or practice)–
Deliberate Indifference to a Serious, Known Medical Need**

95. Defendant Corizon knew about and enforced the policies described herein. Defendant Corizon knew about Plaintiff's serious medical needs (including pain, debilitation, and increased risk of serious complications), yet Defendant intentionally failed to provide and intentionally delayed physical therapy that would have addressed those serious medical needs, knowing that her actions have resulted, and will continue to result, in Plaintiff's continued suffered. Thus, Defendant's actions have caused the wanton infliction of pain upon FDOC prisoners, and have exhibited deliberate indifferent to the serious medical needs of Plaintiff, in violation of the Eight Amendment.

96. Plaintiff is entitled to relief against Defendant Corizon for a systemic failure to treat serious medical conditions in violation of the Eighth Amendment to the United States Constitution, as further outlined above, and as follows:

    a.   Corizon has a policy of denying and delaying consultations and referrals to medical providers outside the institution in order to cut costs;

    b.   Corizon has a national corporate policy to provide prisoners as little care as possible in order to maximize profits;

    c.   Because Corizon encourages employees to minimize health care costs, even when it put prisoners at risk, medical staff felt free to deny care;

    d.   Corizon short-staffs medical positions so inmates, including Plaintiff, were forced to wait months for medical care if not denied outright;

    e.   Corizon fails to discipline medical staff for withholding medical care;

      f.   Corizon has a practice of under-paying medical doctors but permitting them to work short hours to they are rarely available to inmates.

97. Defendant knows, and has known, of the substantial risk of serious harm and actual harm faced by FDOC prisoners who are unable to complete medically needed physical therapy. Yet Defendant has disregarded, and continues to disregard, those risk and harms by failing to provide the physical therapy that would alleviate those risks and harms. Defendant has been deliberately indifferent to the substantial risk of serious harm to FDOC prisoners who need physical therapy.

98. Defendant knows, and has known, of the substantial risk of serious harm and actual harm faced by FDOC prisoners who are unable to consult and treat with specialists and physicians outside of the FDOC system when they have been referred or recommended to do so. Yet Defendant has disregarded, and continues to disregard, those risks and harms by failing to provide for consultations with physicians outside the FDOC system. Defendant has been deliberately indifferent to the substantial risk of serious harm to FDOC prisoners who need to treat with medical providers outside the FDOC system.

99. Defendant, which was responsible for Plaintiff's medical care from September 2015 through May of 2016, has a nationwide corporate policy to provide prisoners with as little care as possible as late as possible in order to maximize profits. This policy encouraged Corizon and staff to deny consultations with outside medical providers.

100.     Because Corizon encouraged its employees to minimize health care costs even when it put prisoners at risk, medical staff felt free to deny care.

101.     Defendant denied Plaintiff critically needed physical therapy post-surgery as part of a policy to reduce and eliminate consultations with doctors and physicians who worked outside of the FDOC.

102.     Defendant's actions with respect to Plaintiff amount to grossly inadequate care.

103.     As a direct and proximate cause of this pattern, practice, policy, and deliberate indifference, Plaintiff has suffered, and continues to suffer from harm and violation of her Eighth Amendment rights.

104.     By denying Plaintiff her medically needed physical therapy, Defendant imposed punishment far in excess of that authorized by law, contrary to the Eighth Amendment.

105.     Defendant's denial of Plaintiff's medically needed physical therapy violated all standards of decency, contrary to the Eight Amendment.

106.     Defendant's actions and "treatment" with respect to Plaintiff's need for physical therapy is medical care so cursory as to amount to no medical care at all.

107.     As it was necessary for Plaintiff to retain the undersigned attorney to represent her, Plaintiff is entitled to an award of attorneys' fees and costs.

108.     Plaintiff has requested, through Discovery that Defendant provide additional information regarding claims for deliberate indifference made by other inmates of the FDOC system, but Defendant failed to provide relevant discovery on this issue. Plaintiff intends to compel this information amend the complaint to include it.

### III.     Defendant Centurion's Violation of the Eighth Amendment- Failure to Treat Pursuant to *Monell* (custom policy, or practice)– Deliberate Indifference to a Serious, Known Medical Need

109.     Defendant Centurion knew about and enforced the policies described herein. Defendant Centurion knew about Plaintiff's serious medical needs (including pain, debilitation, and increased risk of serious complications), yet Defendant intentionally failed to provide and intentionally delayed physical therapy that would have addressed those serious medical needs, knowing that her actions have resulted, and will continue to result, in Plaintiff's continued

suffered. Thus, Defendant's actions have caused the wanton infliction of pain upon FDOC prisoners, and have exhibited deliberate indifferent to the serious medical needs of Plaintiff, in violation of the Eight Amendment.

110.    Plaintiff is entitled to relief against Defendant Centurion for a systemic failure to treat serious medical conditions in violation of the Eighth Amendment to the United States Constitution, as further outlined above, and as follows:

a.   Centurion has a policy of denying and delaying consultations and referrals to medical providers outside the institution in order to cut costs;

b.   Centurion has a national corporate policy to provide prisoners as little care as possible in order to maximize profits;

c.   Because Centurion encourages employees to minimize health care costs, even when it put prisoners at risk, medical staff felt free to deny care;

d.   Centurion short-staffs medical positions so inmates, including Plaintiff, were forced to wait months for medical care if not denied outright;

e.   Centurion fails to discipline medical staff for withholding medical care;

f.   Centurion has a practice of under-paying medical doctors but permitting them to work short hours to they are rarely available to inmates.

111.    Defendant knows, and has known, of the substantial risk of serious harm and actual harm faced by FDOC prisoners who are unable to complete medically needed physical therapy. Yet Defendant has disregarded, and continues to disregard, those risk and harms by failing to provide the physical therapy that would alleviate those risks and harms. Defendant has been deliberately indifferent to the substantial risk of serious harm to FDOC prisoners who need physical therapy.

112.     Defendant knows, and has known, of the substantial risk of serious harm and actual harm faced by FDOC prisoners who are unable to consult and treat with specialists and physicians outside of the FDOC system when they have been referred or recommended to do so. Yet Defendant has disregarded, and continues to disregard, those risks and harms by failing to provide for consultations with physicians outside the FDOC system. Defendant has been deliberately indifferent to the substantial risk of serious harm to FDOC prisoners who need to treat with medical providers outside the FDOC system.

113.     Defendant took over the contract for prisoner health care from Defendant, Corizon, hired most of Corizon's staff, and continued Corizon's practice and policy to deny referrals and consultations with physicians who were not employed by the FDOC.

114.     Defendant, which was responsible for Plaintiff's medical care from May 2016 through the end of her incarceration, has a nationwide corporate policy to provide prisoners as little care as possible as late as possible in order to maximize profits. This policy encouraged Corizon and staff to deny consultations with outside medical providers.

115.     Because Defendant encourages employees to minimize health care costs even when it put prisoners at risk, medical staff felt free to deny care.

116.     Defendant fails to discipline medical staff for withholding medical care.

117.     Defendant's actions with respect to Plaintiff amount to grossly inadequate care.

118.     As a direct and proximate cause of this pattern, practice, policy, and deliberate indifference, Plaintiff has suffered, and continues to suffer from harm and violation of her Eighth Amendment rights.

119.     By denying Plaintiff her medically needed physical therapy, Defendant imposed punishment far in excess of that authorized by law, contrary to the Eighth Amendment.

120.     Defendant's denial of Plaintiff's medically needed physical therapy violated all standards of decency, contrary to the Eight Amendment.

121.     Defendant's actions and "treatment" with respect to Plaintiff's need for physical therapy is medical care so cursory as to amount to no medical care at all.

122.     As it was necessary for Plaintiff to retain the undersigned attorney to represent her, Plaintiff is entitled to an award of attorneys' fees and costs.

123.     Plaintiff has requested, through Discovery that Defendant provide additional information regarding claims for deliberate indifference made by other inmates of the FDOC system, but Defendant failed to provide relevant discovery on this issue. Plaintiff intends to compel this information amend the complaint to include it.

## IV - Defendant Rodriguez's Violation of the Eighth Amendment – Failure to Treat - Deliberate Indifference to a Serious, Known Medical Need

124.     Defendant Jose Rodriguez knew about and enforced the policies described herein. Defendant Jose Rodriguez knew about Plaintiff's serious medical needs (including pain, debilitation, and increased risk of serious complications), yet Defendant intentionally failed to provide and intentionally delayed physical therapy that would have addressed those serious medical needs, knowing that his actions have resulted, and will continue to result, in Plaintiff's continued suffering. Thus, Defendant's actions have caused the wanton infliction of pain upon FDOC prisoners, and have exhibited deliberate indifferent to the serious medical needs of Plaintiff, in violation of the Eight Amendment.

125.     Defendant knows, and has known, of the substantial risk of serious harm and actual harm faced by FDOC prisoners who are unable to complete medically needed physical therapy. Yet Defendant has disregarded, and continues to disregard, those risk and harms by failing to provide the physical therapy that would alleviate those risks and harms. Defendant has

been deliberately indifferent to the substantial risk of serious harm to FDOC prisoners who need physical therapy.

126.     Defendant knows, and has known, of the substantial risk of serious harm and actual harm faced by FDOC prisoners who are unable to consult and treat with specialists and physicians outside of the FDOC system when they have been referred or recommended to do so. Yet Defendant has disregarded, and continues to disregard, those risks and harms by failing to provide for consultations with physicians outside the FDOC system. Defendant has been deliberately indifferent to the substantial risk of serious harm to FDOC prisoners who need to treat with medical providers outside the FDOC system.

127.     Plaintiff requested that Defendant provide access to medically needed physical therapy numerous times during her incarceration, while she was under the control of FDOC staff, including Defendant Rodriguez. Defendant Rodriguez denied Plaintiff's request for physical therapy until nine months after the procedure that necessitated the therapy.

128.     Defendant's actions with respect to Plaintiff amount to grossly inadequate care.

129.     As a direct and proximate cause of this pattern, practice, policy, and deliberate indifference, Plaintiff has suffered, and continues to suffer from harm and violation of her Eighth Amendment rights.

130.     By denying Plaintiff her medically needed physical therapy, Defendant imposed punishment far in excess of that authorized by law, contrary to the Eighth Amendment.

131.     Defendant's denial of Plaintiff's medically needed physical therapy violated all standards of decency, contrary to the Eight Amendment.

132.     Defendant's actions and "treatment" with respect to Plaintiff's need for physical therapy is medical care so cursory as to amount to no medical care at all.

133.	As it was necessary for Plaintiff to retain the undersigned attorney to represent her, Plaintiff is entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

A.	A judgment declaring that the Defendants have exhibited deliberate indifference to the serious medical needs of Plaintiff and have violated Plaintiff's right to be free from Cruel and Unusual Punishment, as secured by the Eighth and Fourteenth Amendments to the Constitution;

B.	A preliminary and permanent injunction requiring Defendants to immediately provide physical therapy consultations to all FDOC prisoners who have been recommended for physical therapy;

C.	An award of nominal, compensatory, and punitive damages against Defendants Corizon and Centurions, and nominal damages against Defendants Jones and Rodriguez;

D.	An award of Plaintiff's attorneys' fees, expenses, and costs of suit; and

E.	Such other relief as the Court may deem equitable and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues which are triable by a jury.

Respectfully Submitted,

**PAUL W. REBEIN, ESQUIRE**
Florida Bar No.: 0488003
**Rebein Brothers, P.A.**
100 Ashley Drive South, Suite 610
Tampa, FL 33602
Tel. (813) 305-7285
Fax. (813) 402-0288
Service-rebein@rbr3.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document was served this 20th day of June, 2018, on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

_____
**PAUL W. REBEIN, ESQUIRE**
Florida Bar No.: 0488003

## SERVICE LIST

**Gregg A. Toomey, Esq.**
FBN: 159689
**The Toomey Law Firm**
1625 Hendry Street, Suite 203
Fort Myers, FL 33901
Service E-mail: get@thetoomeylawfirm.com
**Attorneys for Corizon, Inc.**

**Ana C. Francolin Dolney, Esq.**
FBN: 23162
**Cruser, Mitchell, Novitz, Sanchez, Gaston, & Zimet, LLP**
151 S. Orange Avenue, Suite 1500
Orlando, FL 32801
Service E-Mail: flcourtfilings@cmlawfirm.com
**Attorneys for Centurion of Florida, LLC**